**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Glander International Bunkering Inc. | |
| Plaintiff, | Civil Action No. 1:21-cv-06830-WFK-TAM |
| v. | ECF Case |
| M/V TERESA (IMO 9175016), *in rem*, | |
| Defendant. | |
| JMB Shipping ATB 284, LLC, JMB Shipping ATB 220, LLC, and JMB Shipping ATB 205, LLC, | |
| Intervening Plaintiffs, | |
| v. | |
| Unico Marine Services LLC, *in personam*. | |
| Defendant. | |
| E.N. Bisso & Son, Inc., | |
| Intervening Plaintiff, | |
| v. | |
| M/V TERESA, *in rem*, BARGE ACADIA, *in rem*, and Unico Marine Services LLC, *in personam*. | |
| Defendants. | |

## INTERVENING PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO VACATE WRIT OF ATTACHMENT

WATSON FARLEY & WILLIAMS LLP
John G. Kissane
Celinda J. Metro
250 West 55th Street
New York, New York 10019
Tel: (212) 922-2200
Fax: (212) 922-1512
Email: jkissane@wfw.com
　　　cmetro@wfw.com

*Counsel to Intervening Plaintiffs JMB Shipping ATB 284, LLC, JMB Shipping ATB 220, LLC, and JMB Shipping ATB 205, LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................4

BACKGROUND ............................................................................................6

1.      Unico Marine Breaches Charters of the 284 Unit, 205 Unit, and 220 Unit........................6

2.      Parties Commenced Arbitration...............................................................8

3.      Unico Marine is Attempting to Sell its Last Asset ............................................8

ARGUMENT ..............................................................................................9

I.      Unico Marine Has Failed to Meet Its Burden for Vacatur......................................9

   A.   Appointment of Agent for Service in Southern District Does Not
        Warrant Vacatur........................................................................11

   B.   Unico Marine's Appointment of an Agent and Registration to Do
        Busines in New York Does Not Compel Vacatur .........................................14

II.     Equitable Considerations Do Not Favor Vacatur ............................................18

   CONCLUSION...........................................................................21

## **TABLE OF AUTHORITIES**

Page(s)

Cases

*American Tr. Ins. Co. v. Sartor*,
   3 N.Y.3d 71, 781 N.Y.S.2d 630, 814 N.E.2d 1189 [2004] ...................................... 14

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
   460 F.3d 434 (2d Cir. 2006) ........................................................................... 3, 9, 12

*Aybar v. Aybar*,
   2021 WL 4596367 (N.Y. Oct. 7, 2021) ................................................................. 14

*Boland Marine & Industrial, LLC v. Bouchard Transportation Co., Inc.*,
   2020 WL 10051743 (W.D. Tex. Feb. 28, 2020) .................................................. 3, 17

*Cantone & Co., Inc. v. SeaFrigo*,
   2009 WL 210682 (S.D.N.Y. Jan. 27, 2009) ............................................................ 13

*Chatwal Hotels & Resorts LLC*,
   90 F.Supp.3d 97 (S.D.N.Y. 2015) .......................................................................... 15

*Chufen Chen v. Dunkin' Brands, Inc.*,
   954 F.3d 492 (2d Cir. 2020) ................................................................................... 15

*d'Amico Dry d.a.c. v. McInnis Cement Inc.*,
   469 F.Supp.3d 185 (S.D.N.Y. 2020) ................................................................. 11, 12

*Daimler AG v. Bauman*,
   571 U.S. 117, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) ............................................ 13

*Far E. Shipping Co. v. Progress Bulk Carriers, Ltd.*,
   2008 A.M.C. 721, 2008 WL 2035788 (S.D.N.Y. Feb. 8, 2008) .............................. 16

*Gucci Am., Inc., v. Weixing Li*,
   768 F.3d 122 (2d Cir. 2014) ................................................................................... 15

*Hyundai Merchant Marine Co. Ltd. v. Oceanic Petroleum Source Pte Ltd.*,
   656 F.Supp.2d 416 (S.D.N.Y. 2009) ............................................................ 3, 10, 17

*Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd.*,
   476 F. Supp. 119 (S.D.N.Y. 1979) ................................................................... 11, 12

*Ivan Visin Shipping Ltd. v. Onego Shipping & Charteing B.V.*,
   2008 WL 839714 (S.D.N.Y. Mar. 31, 2008) .......................................................... 13

*Kuzmich v. 50 Murray St. Acquisition LLC*,
    34 N.Y.3d 84, 108 N.Y.S.3d 431, 132 N.E.3d 624 [2019] ................................. 14, 17

*Matter of Chemical Specialties Mfrs. Assn. v. Jorling*,
    85 N.Y.2d 382, 626 N.Y.S.2d 1, 649 N.E.2d 1145 [1995] ....................................... 14

*Minholz v. Lockheed Martin Corp.*,
    227 F.Supp.3d 249 (N.D.N.Y. 2016).......................................................................... 15

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*,
    2021 WL 5926893 (N.Y. Dec. 16, 2021) ................................................................... 14

*ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*,
    585 F.3d 105 (2d Cir. 2009) ......................................................................................... 9

*STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.*,
    560 F.3d 127 (2d Cir. 2009) ................................................................................. 13, 16

*Swiss Marine Services S.A. v. Louis Dreyfus Energy Services L.P.*,
    598 F.Supp.2d 414 (S.D.N.Y. 2008) ........................................................................ 13


Statutes


9 U.S.C. § 8.......................................................................................................................... 4

New York's Business Corporation Law § 1301 .................................................... 14, 15

New York's Business Corporation Law § 305 ...................................................... 14, 15

## PRELIMINARY STATEMENT

Intervenor Plaintiffs JMB Shipping ATB 284, LLC, JMB Shipping ATB 220, LLC, and JMB Shipping ATB 205, LLC (collectively, "JMB Shipping") respectfully submit this memorandum of law in opposition to the motion by Defendant Unico Marine Services LLC ("Unico Marine") to vacate the maritime attachment JMB Shipping obtained pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims ("Rule B") of the Federal Rules of Civil Procedure for the purpose of obtaining security for the pending arbitration pursuant to Federal Arbitration Act, 9 U.S.C. §8 (the "FAA").

JMB Shipping has a valid maritime attachment of the M/V TERESA and barge ACADIA, property of Unico Marine currently in the Eastern District of New York.  JMB Shipping has *prima facie* maritime claims against Unico Marine for its breaches of three charter parties between JMB Shipping, as owner, and Unico Marine, as charterer; these maritime claims are the subject of a pending consolidated arbitration before the Society of Maritime Arbitrators (the "Arbitration"). JMB Shipping brought this present action in aid of arbitration pursuant to Rule B for the purpose of obtaining security, as specifically authorized by the FAA.  There is no dispute that Unico Marine could not be served with process in the Eastern District of New York.  Thus, Unico Marine was not and cannot be found in the Eastern District for purposes of Rule B.

Nonetheless, Unico Marine seeks to vacate the attachment obtained in the Eastern District of New York on grounds that Unico Marine can allegedly be found in the Southern District of New York, by virtue of its recent appointment of CT Corporation System ("CT Corporation") as its agent and registration to do business.  However, the law in this Circuit does not permit vacatur under the circumstances present here, and considerations of equity strongly disfavor vacating JMB Shipping's attachment.

Unico Marine bears the burden to demonstrate that equitable vacatur is both permissible and advisable under the circumstances present here, and it fails to do so.  Unico Marine does not dispute that JMB Shipping has *prima facie* maritime claims against Unico Marine, and that Unico Marine is not present within the Eastern District.

What is more, the equities strongly disfavor vacating the Rule B attachment.  First, although Unico Marine has posted $14 million in cash security held in escrow for the arbitration, Unico Marine has never offered or posted any security for JMB Shipping's claims before the same tribunal.  Second, a significant portion of JMB Shipping's claims (more than $650,000) arise because JMB Shipping was forced to pay Unico Marine's debts to bunker suppliers, tugboat operators and others to prevent the arrest of JMB Shipping's vessels; these debts constitute maritime liens Unico Marine wrongfully incurred as charterer.  Third, it is undisputed that Unico Marine's sole remaining assets are the M/V TERESA and barge ACADIA.  Fourth, Unico Marine concedes it was scheduled to sell these assets on or about December 20, 2021; the effect being that Unico Marine would be judgment proof against any award in JMB Shipping's favor.  Finally, despite claiming to not be insolvent, Unico Marine has failed to pay past due invoices owed to Glander International Bunkering, Inc. ("Glander"), E.N. Bisso & Sons, Inc. ("E.N. Bisso"), Buck Kreihs Marine Repair, L.L.C. ("Buck Kreihs"), and others, all of whom have either filed suit against Unico Marine or have looked to JMB Shipping for payment.  Unico Marine has also proven unable to post any security for the release of its tug and barge from Glander's arrest, and instead requested to pay that debt through proceeds of its sale of the TERESA/ACADIA.

In light of the foregoing, Unico Marine's motion to vacate the attachment should be denied.

## BACKGROUND

This action was commenced by Glander against the M/V TERESA, *in rem*. On December 16, 2021, JMB Shipping filed a verified complaint in intervention seeking the attachment of property of Unico Marine located within the Eastern District, and specifically the integrated tug/barge unit the Defendant M/V TERESA and barge ACADIA. JMB Shipping respectfully refers the Court to JMB Shipping's verified complaint in intervention (the "Complaint," ECF No. 16), application for writ of attachment (ECF No. 18), and declaration in support (ECF No. 17) for a more detailed background. However, JMB Shipping sets forth a brief summary, below. JMB Shipping also respectfully refers the Court to the Declaration of Alan Davis, dated December 23, 2021 (the "Davis Decl.") filed herewith.

**1.    Unico Marine Breaches Charters of the 284 Unit, 205 Unit, and 220 Unit**

JMB Shipping's claims arise out of Unico Marine's breaches of bareboat charter agreements (the "284 Agreement," "205 Agreement," and "220 Agreement," collectively the "Bareboat Charter Agreements"). Pursuant to the Bareboat Charter Agreements, Unico Marine chartered three integrated tug/barge units: 284 Unit, 205 Unit, and 220 Unit (collectively the "Units"). As set forth in JMB Shipping's Complaint, an affiliate of JMB Shipping acquired the Units through the judicial auction of the assets of Bouchard Transportation Co. Inc., and thereafter transferred ownership of the 284 Unit, 205 Unit, and 220 Units to JMB Shipping ATB 284, LLC, JMB Shipping ATB 220, LLC, and JMB Shipping ATB 205, LLC, respectively. Unico Marine's charter of the Units with the prior owner were assumed by JMB Shipping through the bankruptcy sale. Thus, at all relevant times, these entities were the owners of the Units and the counterparty to Unico Marine under the Bareboat Charter Agreements.

In October 2021, Unico Marine failed to pay charter hire for Unit 284, and informed JMB Shipping that it intended to breach the 284 Agreement by ceasing to perform as charterer and by

redelivering the 284 Unit the next day, October 5, 2021.  Unico Marine then effectively abandoned the 284 Unit and Unico's own crew at a dock in New Jersey on or about October 7, 2021.  JMB Shipping ATB 284, LLC took repossession of 284 Unit under protest in the interest of preserving the 284 Unit and ensuring sufficient crew for safekeeping.  As a result of Unico Marine's breach of the 284 Agreement, JMB Shipping ATB 284, LLC suffered damages of approximately $597,977.

Also in October 2021, Unico Marine failed to pay charter hire for Unit 205 when due.  Under the terms of the 205 Agreement, Unico Marine was required to maintain, service, repair and preserve the 205 Unit and its equipment.  However, Unico Marine failed to make necessary repairs or maintain the 205 Unit.  Additionally, Unico Marine permitted liens to accrue against the 205 Unit, in further breach of the terms of the 205 Agreement, which liens have since been paid by JMB Shipping ATB 205, LLC.  As a result of these breaches, JMB Shipping ATB 205, LLC arrested the 205 Unit in the Eastern District of Louisiana pursuant to Supplemental Rule D to retake possession.  Rather than surrender the vessel as required under the terms of the 205 Agreement, Unico Marine opposed JMB Shipping ATB 205, LLC's repossession, causing it to incur berthage fees, crew wage expenses, custodial fees and other costs during a 47-day seizure as it attempted to obtain possession of its own vessel from Unico Marine.  In sum, JMB Shipping ATB 205, LLC sustained damages of approximately $2,141,063 as a result of Unico Marine's breaches of the 205 Agreement.

Lastly, in October 2021, Unico Marine breached the terms of the 220 Agreement for the 220 Unit when it failed to pay charter hire, failed to maintain the 220 Unit, and failed to conduct necessary repairs.  As a result of these breaches, JMB Shipping ATB 220, LLC caused the arrest of its 220 Unit in the Middle District of Florida to retake possession.  As with the 205 Unit, Unico

Marine opposed JMB Shipping ATB 220, LLC's effort to repossess the 220 Unit, causing JMB Shipping to incur berthage fees, crew wage expenses, custodial fees, and other costs during another 47-day seizure.  As a result of Unico Marine's breaches of the 220 Agreement, JMB Shipping ATB 220, LLC has sustained damages of approximately $1,031,117.

## 2.      Parties Commenced Arbitration

Shortly after Unico Marine's breaches of the Bareboat Charter Agreements that give rise to JMB Shipping's maritime claims, the parties commenced three separate arbitrations – one with respect to each Bareboat Charter Agreement.  *See* Davis Decl. ¶¶10-17.  The parties each appointed an arbitrator (Unico Marine's appointment later withdrew and was replaced), which arbitrators selected a chairperson; the arbitration panel was accepted by JMB Shipping on November 12, 2021, and by Unico Marine on December 2, 2021.  *Id.*  The three separate proceedings were consolidated into a single arbitration (the "Arbitration") on or about December 14, 2021.  *Id.* ¶17.  Contrary to Unico Marine's representations in their motion, the arbitration is not "well underway"; rather, it has barely commenced: no briefing schedule has been set (nor has one been discussed) and no hearing dates have been scheduled (nor have any been discussed).  *Id.*

JMB Shipping has already posted cash security of US$14 million held in escrow by BOKF Financial, for Unico Marine's claims in the Arbitration.  Conversely, Unico Marine has posted no security, and seeks to vacate JMB Shipping's security so that Unico Marine can sell its remaining assets (as further detailed below), effectively rendering Unico Marine judgment proof.

## 3.      Unico Marine is Attempting to Sell its Last Asset

In mid-December 2021, JMB Shipping learned that Unico Marine intended to sell the M/V TERESA and barge ACADIA pursuant to a private sale, despite the vessel being under arrest by Plaintiff Glander.  Indeed, Unico Marine admits it has "contracted to sell the Tug TERESA and barge ACADIA to a buyer, with the closing to take place in New York following the buyer's

inspection that is due to take place [] December 21, 2021." (Declaration of Riccardo Valentini, ECF No. 35, ¶36). JMB Shipping only obtained this information in the course of trying to resolve a lien on the 205 Unit in favor of Glander, based on fuel and lube oils that Unico Marine ordered but never paid for.

The tug TERESA and barge ACADIA are the only vessels owned by Unico Marine. *See* Davis Decl. ¶19. Therefore, as best JMB Shipping can determine (and Unico Marine has not disputed), such a sale would leave Unico Marine with no assets, rendering it judgment proof and depriving JMB Shipping of any security for the arbitration. As such, JMB Shipping sought and obtained from this Court an order for the issuance of a writ for attachment of the M/V TERESA and barge ACADIA, together with any other property of Unico Marine's within the Eastern District.

## ARGUMENT

### I.  Unico Marine Has Failed to Meet Its Burden for Vacatur

Unico Marine has failed to show that JMB Shipping's Rule B attachment should be vacated as a matter of law. Indeed, Unico Marine has conflated the standard for a Rule B attachment with the discretionary guideline established in *Aqua Stoli* which permits, but *does not mandate*, vacatur of an attachment under limited circumstances. What is more, Unico Marine's assertion that it can be found in the Southern District of New York by virtue of its registration to do business and appointment of an agent for service of process in the Southern District is not supported by recent New York law.

JMB Shipping has clearly made a prima facie case that it is entitled to attachment of Unico Marine's property, including the M/V TERESA and barge ACADIA. Supplemental Rule B provides in relevant part:

> If a defendant is not found within the district, … a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process…. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment.   The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Fed. R. Civ. P. Supp. Rule B(1).  Rule B allows a plaintiff to obtain a maritime attachment if (1) the plaintiff has a valid prima facie admiralty claim against the defendant, (2) the defendant is not found within the district, (3) the defendant's property may be found within the district, and (4) there is no other legal bar to the attachment.

Here, JMB Shipping has valid prima facie admiralty claims based on Unico Marine's breaches of bareboat charter parties; Unico Marine does not dispute this.  Unico Marine's property can be found within the Eastern District of New York – to wit, the M/V TERESA and barge ACADIA, which were already under seizure in this suit when JMB Shipping intervened.  Again, Unico Marine does not dispute this.  Unico Marine is not found within the Eastern District, and Unico Marine does not deny that at the time of attachment it had no agent for service, office, operations, or presence within the Eastern District.[1]  Lastly, there is no legal bar to JMB Shipping's attachment of the M/V TERESA, barge ACADIA and any other property belonging to Unico Marine in the Eastern District.  Unico Marine does not contest this.  Accordingly, it appears undisputed that JMB Shipping has satisfied the requirements for a Rule B maritime attachment.

Where the conditions for an attachment under Rule B exist, as they do here, the "attachment may be vacated *only* in certain limited circumstances." *Aqua Stoli Shipping Ltd. v. Gardner Smith*

---

[1] "The time for determining whether a defendant is 'found' in the district is set at the time of the filing of the verified complaint… A defendant cannot defeat the security purpose of attachment by appointing an agent for service of process after the complaint and affidavit are filed." *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105, 112 n. 4 (2d Cir. 2009) (internal quotation omitted).

*Pty Ltd.*, 460 F.3d 434, 444 (2d Cir. 2006) (emphasis added), *abrogated by Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009). In *Aqua Stoli* the Second Circuit held, in dicta, that it may be appropriate to vacate where 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) *the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise*. *Id at* 445.

These specific conditions do not exist here. What is more, *Aqua Stoli* does not compel vacatur even if a defendant establishes one of the enumerated circumstances; rather, this court has "equitable discretion to determine whether vacatur is appropriate…". *Hyundai Merchant Marine Co. Ltd. v. Oceanic Petroleum Source Pte. Ltd.*, 656 F.Supp.2d 416, 420 (S.D.N.Y. 2009).

## A.     Appointment of Agent for Service in Southern District Does Not Warrant Vacatur

Unico Marine concedes that it cannot be found in the Eastern District. Rather, Unico Marine argues that its recent appointment of CT Corporation as agent for service of process in the Southern District defeats JMB Shipping's attachment. Such a last-minute appointment of an agent for service of process in an adjacent district does not permit a district court to vacate an attachment.

Indeed, even Unico Marine seems to know that its recently-appointed agent for service in the Southern District is irrelevant here; on December 20, 2021, the same day it filed its Motion to Vacate arguing that its appointment of an agent in the Southern District was sufficient to shield the TERESA and ACADIA from attachment in the Eastern District, Unico Marine sent a letter to another creditor, E.N. Bisso, specially appointing an agent for service of process in the Eastern District.[2] It appears this was done specifically to prevent E.N. Bisso from attaching the TERESA and ACADIA for claims against Unico Marine arising out of services provided to JMB Shipping's

---

[2] *See* Declaration of Michael Vitt, attached as Exhibit 1.

205 Unit on Unico Marine's order, and has resulted in JMB Shipping being forced to pay those claims directly to avoid the seizure of the 205 Unit. *See* Davis Decl., ¶¶ 25-27. Unico Marine's quiet appointment of an agent in the Eastern District belies its argument that one is not necessary there. The fact that its effort has forced JMB Shipping to pay another of Unico Marine's debts heightens the equitable grounds for preserving JMB Shipping's attachment.

(1)     Unico Marine Cannot be Found in the District

The rule in this Circuit, and the majority of Circuits, is that even the appointment of an agent in the district is insufficient to prevent an attachment. *Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd.*, 476 F. Supp. 119, 124 (S.D.N.Y. 1979). In *Integrated Container Serv.,* the court found that the defendant's appointment of the New York Secretary of State to accept service in the Southern District of New York was sufficient to prevent a maritime attachment in that district *only if* the defendant (1) has engaged in sufficient activity in the district or the cause of action has sufficient contacts with the district to permit the court to exercise *in personam* jurisdiction over the defendants and (2) can, in addition, be found within the geographical confines of the district for service of process. *Id.* at 122. This is because "[a]n attachment under the Admiralty Rule serves two purposes: (1) to obtain jurisdiction of the defendant *in personam* through his property, and (2) to secure a fund out of which a judgment may be satisfied." *Id.* at 122.

Unico Marine fails to allege either that it was or is engaged in such systematic and continuous business activities in the Eastern District so as to subject itself to this Court's general jurisdiction, or that it can be served within this District. Indeed, with respect to being found within the district for service of process, "[t]he precise question is whether 'an officer, a managing or general agent' or other responsible representative of respondent could have been found in the district by the Marshal with reasonable diligence for service of process on respondent." *United*

States v. Cia. Naviera Cont'l S.A., 178 F. Supp. 561, 565 (S.D.N.Y. 1959); see also d'Amico Dry

d.a.c. v. McInnis Cement Inc., 469 F.Supp.3d 185, 190 (S.D.N.Y. 2020) (denying motion to vacate

attachment where defendant was subject to specific personal jurisdiction in New York but was not

"found" within the district for service of process) .  Appointing CT Corporation in the Southern

District does not satisfy this requirement.

Unico Marine relies on Aqua Stoli to justify its motion to vacate, but in that case the Second

Circuit confirmed the Integrated Container rule that the district court's equitable power to vacate

a proper maritime attachment is extremely limited.  460 F.3d at 446 ("We also reject the reasoning

of those few district court cases decided before Winter Storm that engaged in a broader equitable

inquiry. Even after the promulgation of Rule E(4)(f), the vast majority of district court decisions

continued to follow the limited Integrated rule").

In quoting Integrated, the Second Circuit adopted its conclusion:

> No matter how convincingly demonstrated the plaintiff's need for
> security, it will not authorize attachment against a defendant who is
> present in the district in both senses. On the other hand, *the fact that*
> *a defendant can be subjected to the court's* in personam *jurisdiction*
> *by virtue of the presence of a resident agent for service of process*
> *will not suffice to defeat the attachment if the defendant is not*
> *otherwise present in the district in the jurisdictional sense; nor will*
> *the fact that the defendant is present in the jurisdictional sense*
> *suffice, if he cannot be found for service of process within the*
> *district.* This test amounts to a somewhat arbitrary compromise
> which assumes that the plaintiff will not require the protection of an
> attachment for security, nor should the defendant be subjected to it,
> if the defendant is present in both senses, and assumes on the other
> hand that the plaintiff's interests are not adequately protected despite
> the ability to perfect *in personam* jurisdiction if the defendant is not
> present in both senses.

460 F.3d at 443 (emphasis added); see also d'amico Dry d.a.c., 469 F.Supp.3d at 189.

Here, Unico Marine has failed to allege either of the two requirements that would defeat

the attachment, namely that at the time of attachment (1) it had an agent in the Eastern District for

service of process (it did not), and (2) it is otherwise present in a jurisdictional sense by conducting systematic business in the Eastern District.

### B.     Unico Marine's Appointment of an Agent and Registration to Do Business in New York Does Not Compel Vacatur

Unico Marine reliance on *STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.*, 560 F.3d 127 (2d Cir. 2009) is misplaced.  Unico Marine argues that the last-minute appointment of CT Corporation as agent in the Southern District of New York abrogates the need that it be found *jurisdictionally* and have an agent for service in the district before a court is permitted to vacate a maritime attachment on equitable grounds. This, despite the fact that CT Corporation is not located in the Eastern District, and despite Unico Marine's attempt *after* JMB Shipping's attachment to preclude E.N. Bisso from attaching by appointing an agent in the Eastern District.[3]

The *STX* court noted that an agent authorized to accept process is, alone, insufficient to establish that a defendant is found within that district, for purposes of the admiralty rule authorizing attachment in suits *in personam* if the defendant shall not be found within the district.  However, based upon the court's interpretation of New York law, the *STX* court found that registration for business and appointment of an agent in New York state subjected the defendant to jurisdiction in

---

[3] The examples of vacatur cited by Unico Marine are distinguishable from the circumstances here, and do not favor vacatur of JMB Shipping's rule B attachment.  In *Cantone & Co., Inc. v. SeaFrigo*, No. 07 Civ. 6602(PKL), 2009 WL 210682 (S.D.N.Y. Jan. 27, 2009), the court vacated a maritime attachment having concluded that an affiliate of the defendant located in New Jersey acted as the general agent for the defendant, and as such, the defendant was subject to personal jurisdiction in New Jersey.  In *Swiss Marine Services S.A. v. Louis Dreyfus Energy Services L.P.*, 598 F.Supp.2d 414 (S.D.N.Y. 2008), the court vacated an attachment where the defendant (1) had a principal office and agent in Connecticut, (2) was subject to personal jurisdiction in New Jersey, conducting millions in business in the state and having an agent in the state, and (3) was subject to personal jurisdiction in the Northern District of New York, by virtue of millions in sales transactions in the district and having an agent in the district.  In *Ivan Visin Shipping Ltd. v. Onego Shipping & Charteing B.V.*, No. 08 Civ. 1239 (JSR), 2008 WL 839714 (S.D.N.Y. Mar. 31, 2008), the court concluded that the defendant was subject to personal jurisdiction in New Jersey where agent of defendant, which carried out "continuous and systematic course of business" on defendant's behalf had principal place of business in New Jersey.  Indeed, the court in *Cantone* observed that "[w]here a defendant is jurisdictionally present in ... an adjacent district, the ability of the court to exercise in personam jurisdiction over the defendant satisfies the plaintiff's need for assurance that it will be able to call the defendant into court to satisfy a judgment." 2009 WL 210682 at *21 (internal quotation omitted).  That rationale simply does not apply to Unico Marine, as it has no operational presence in the Southern District, nor any assets there, nor will it have any assets at all if the attachment is vacated and the TERESA/ACADIA sold. Unico Marine's recent rental of a mailbox at CT Corporation notwithstanding, if vacatur is granted JMB Shipping will have not have even the slightest assurance that it will be able to satisfy a judgment against Unico Marine anywhere at all

New York.  Federal law defines the requirements necessary for satisfaction of Rule B.  The court, however, noted that federal courts look to the relevant state law to determine if those requirements are met.  *Id.* at 560 F.3d 127, 131.

New York law does not support Unico Marine's position.  More particularly, the *STX* court cited to numerous cases decided prior to *Daimler AG v. Bauman,* 571 U.S. 117, 128, 134 S.Ct. 746, 761, 187 L.Ed.2d 624 (2014), wherein the Supreme Court of the United States reined in general jurisdiction significantly by holding that a corporation is present in a forum State, and thereby rightfully subject to general jurisdiction, only where its "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." (internal quotation omitted).

The New York Court of Appeals has recently determined that registration to do business under New York's Business Corporation Law § 1301(a) does not subject a party to personal jurisdiction in New York. The Court of Appeals held:

> These statutory provisions plainly require that, in order to do business in New York, a foreign corporation must register and designate an in-state agent for service of process. The statutes do not, however, condition the right to do business on consent to the general jurisdiction of New York courts or otherwise afford general jurisdiction to New York courts over foreign corporations that comply with these conditions. A different reading would improperly "amend [the] statute by adding words that are not there" (*American Tr. Ins. Co. v. Sartor,* 3 N.Y.3d 71, 76, 781 N.Y.S.2d 630, 814 N.E.2d 1189 [2004]) and would impermissibly "read into a statute a provision which the [l]egislature did not see fit to enact" (*Matter of Chemical Specialties Mfrs. Assn. v. Jorling,* 85 N.Y.2d 382, 394, 626 N.Y.S.2d 1, 649 N.E.2d 1145 [1995] [internal quotation marks and citation omitted]). **Accordingly, a foreign corporation's registration to do business and designation of an agent for service of process in New York does not constitute consent to general jurisdiction under the Business Corporation Law's plain terms** (*see Kuzmich v. 50 Murray St. Acquisition LLC,* 34 N.Y.3d 84, 91, 108 N.Y.S.3d 431, 132 N.E.3d 624 [2019], *cert denied* —— U.S. ——, 140 S. Ct. 904, 205 L.Ed.2d 462 [2020] [a

court must give effect to the plain meaning of the statute's language]).[3]

*Aybar v. Aybar*, No. 54, 2021 WL 4596367, at *2 (N.Y. Oct. 7, 2021) (emphasis added); *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, No. 73, 2021 WL 5926893, at *10 (N.Y. Dec. 16, 2021) (concluding registration under NY BCL 305 (registered agent for service of process) does not confer personal jurisdiction over the registrant.)

"After *Daimler,* with the Second Circuit cautioned against adopting 'an overly expansive view of general jurisdiction,' the mere fact [that a defendant is] registered to do business is insufficient to confer general jurisdiction in a state that is neither its state of incorporation [n]or its principal place of business." *Chatwal Hotels & Resorts LLC,* 90 F.Supp.3d 97, 105 (S.D.N.Y. 2015) (internal citation omitted) (quoting *Gucci Am., Inc., v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014)). "Because New York Business Corporations Law § 1301 is absent an explicit indication that registration subjects a registrant to general jurisdiction in New York, an exercise of general personal jurisdiction based on registration alone would be counter to the principles of due process articulated in *Daimler*." *Minholz v. Lockheed Martin Corp.,* 227 F.Supp.3d 249, 264 (N.D.N.Y. 2016).

Indeed, the Second Circuit had recently predicted that the Court of Appeals would hold that registration and appointment of an agent pursuant to New York Business Corporation law § 1301 does not subject the registrant to personal jurisdiction in New York. *See Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 499 (2d Cir. 2020) ("Accordingly, in light of *Daimler*, our own precedent, and the unanimous conclusion of the three New York intermediate courts to have considered the issue, we now hold that a foreign corporation does not consent to general personal jurisdiction in New York by merely registering to do business in the state and designating an in-state agent for service of process under BCL § 1301(a). We have little trouble concluding that were

the New York Court of Appeals to decide the issue, it would agree that this conclusion is consistent with the U.S. Constitution and the evolving law surrounding general personal jurisdiction.")

Unico Marine's attempt to distinguish *Aybar* by claiming Rule B does not require a defendant seeking vacatur to prove it is subject to general jurisdiction in New York State is unavailing.  Unico Marine concedes that the first step to determining whether an entity can be "found" in a district is whether it "can be found within the district in terms of jurisdiction" (*Aqua Stoli*, 560 F.3d at 130), and has sufficient contacts with that district to meet minimum due process standards.  However, Unico Marine does not cite any other contacts with the Southern District that would satisfy due process standards.  *Compare Far E. Shipping Co. v. Progress Bulk Carriers, Ltd.*, 2008 A.M.C. 721, 2008 WL 2035788 (S.D.N.Y. Feb. 8, 2008) (observing defendant was "jurisdictionally present" when contract at issue was negotiated by defendant's New York-based managing agent, called for contract payments to be made in New York, and defendant had continuous business contacts with New York).  Contrary to Unico Marine's suggestions, the terms of the Bareboat Charter Agreements compel arbitration in New York, New York (*See* e.g., ECF No. 16-1, cl. 24)—they are silent on submission to the jurisdiction of any courts in New York.  As such, Unico Marine is left to rely solely on its registration to do business in New York and appointment of an agent for service in the Southern District – which, under *Aybar*, in insufficient as a matter of law.

In light of the recent Court of Appeals and Second Circuit decisions, it is submitted that the holding of *STX Panocean* has been abrogated, and the rules set forth in *Integrated Container Serv., Inc.* apply.  As such, Unico Marine's argument that the Southern District is a convenient alternative jurisdiction must be rejected.

## II.     **Equitable Considerations Do Not Favor Vacatur**

Even if the Southern District was a convenient alternative jurisdiction, the attachment should not be vacated on equitable grounds.  It is clear that Unico Marine intends to sell its sole remaining assets as soon as possible, thereby depriving JMB Shipping of the only apparent security for its claims.  Thus, the attachment serves the "traditional policy underlying maritime attachment . . . to permit the attachments of assets wherever they can be found and not to require the plaintiff to scour the globe to find a proper forum for suit or property of the defendant sufficient to satisfy a judgment." *Id.* at 443.

Even if Unico Marine established grounds for equitable vacatur – which it has not – *Aqua Stoli* does not compel vacatur; rather, this court has "equitable discretion to determine whether vacatur is appropriate…".  *Hyundai Merchant Marine Co. Ltd. v. Oceanic Petroleum Source Pte. Ltd.*, 656 F.Supp.2d 416, 420 (S.D.N.Y. 2009).

In *Hyundai Merchant Marine Co. Ltd. v. Oceanic Petroleum Source Pte ltd.*, 656 F.Supp.2d 416 (S.D.N.Y. 2009), the court concluded "it has equitable discretion to determine whether vacatur is appropriate once defendant has shown, at a Rule E hearing, that one of the limited grounds for vacatur enumerated in *Aqua Stoli* is present."  *Id.* at 420.  The court in *Hyundai* concluded "the balance of equities weighs against vacatur" on the grounds, *inter alia*, "there is a meaningful possibility that any judgment on the merits procured by plaintiff in the [] arbitration will go unsatisfied."  *Id.*

Similarly, in *Boland Marine & Industrial, LLC v. Bouchard Transp. Co., Inc.*, No. 1:20-CV-66-LY-ML, 2020 WL 10051743, at *11 (W.D. Tex. Feb. 28, 2020), the court concluded equity did not favor vacatur of maritime attachment where, *inter alia*, defendant appeared deeply insolvent.  "[C]ourts have repeatedly recognized that maritime attachment serves two objectives:

to obtain jurisdiction over the defendant and *to assure satisfaction of any judgment in favor of the party bringing the action*." *Id.* (emphasis added). "[T]he spirit of [Rule B] is not violated when a party's primary interest in seeking the attachment is obtaining security to satisfy a judgment…". *Staronset Shipping Ltd. v. North Star Nav. Inc.*, 659 F.Supp.189, 191 (S.D.N.Y. 1987).

Here, Unico Marine has posted no security in the Arbitration, while JMB Shipping has posted US$14 million for Unico Marine's counterclaims. *See* Davis Decl. ¶¶7-9. Unico Marine incorrectly suggests that JMB Shipping is secured two ways: first, by JMB Shipping's retention of a small amount of fuel and lube oil onboard vessels repossessed by JMB Shipping; second, by guarantees from a Unico Marine "affiliate," Unico Commodities LLC, Inc. but this is not the case. As to the former, the value of the net fuel and lube oil onboard all three vessels at the time of JMB Shipping's repossession were specifically identified in JMB Shipping's Complaint as credits in Unico Marine's favor, and were excluded from JMB Shipping's claim and from the amount of security it seeks. *See* Davis Decl. ¶8; ECF No. 16, ¶¶ 15, 27, and 36. As to the latter, in an action pending in the U.S. District Court for the Southern District of New York on one such guarantee (the "SDNY Action")[4], counsel for Unico Commodities LLC has already indicated it will seek dismissal of the complaint under Rule 12(b)(6).[5]

It is undisputed that Unico Marine's sole remaining assets are the M/V TERESA and barge ACADIA. Unico Marine confirms it has an agreement to sell these assets the moment the pending arrests and attachments are lifted, and makes no attempt to show that the assets will not be dissipated in order to deprive JMB Shipping of security, effectively rendering Unico Marine judgment proof.

---

[4] *JMB Shipping ATB 284, LLC v. Unico Commodities LLC*, No. 21-cv-8907-AKH.

[5] Unico Marine is not a party to and has not appeared in the SDNY Action, contrary to the Valentini Declaration, at ¶29.

Unico Marine claims it is not insolvent (*see* Valentini Decl.¶39), but points to no other assets or revenue streams, and leaves behind it a trail of unpaid creditors that suggest otherwise. E.N. Bisso, for instance, was forced to intervene in this action to assert liens against the TERESA after Unico Marine defaulted on a payment plan for four invoices of $10,000 - $15,000, which were by then already 120-150 days past due. *See* Vitt Decl. ¶12. Unico Marine's representation of solvency is further belied by the fact that it has not posted security to obtain the release of the M/V TERESA or barge ACADIA, and was instead negotiating with Glander to pay the majority of its lien through the proceeds of the TERESA sale. Davis Decl. ¶24. Given Unico Marine's contention that the seizure of its vessels threatens the sale, the Court may infer from the fact that it is relying on the proceeds of the sale to extinguish even Glander's $490,000 lien that Unico Marine does *not* have sufficient assets to pay any judgment in JMB Shipping's favor.

Finally, equity requires that the attachment be maintained because a considerable portion of JMB Shipping's claim is based on debts of Unico Marine that JMB Shipping has paid to extinguish liens wrongfully incurred against its vessels when Unico Marine left creditors unpaid. Specifically, JMB Shipping has settled liens of Buck Kreihs ($330,000.00), Glander ($216,015.81), and E.N. Bisso ($33,434.70), all of which arose because Unico Marine ordered necessaries during its period as charterer of JMB Shipping's vessels and then failed to pay for them. Making matters worse, Unico Marine failed to pay those creditors who it knew would look to liens on JMB Shipping's vessels for recover, while prioritizing creditors whose liens were against the TERESA. *See* Davis Decl., ¶¶ 23-25, 27; Vitt Decl., ¶¶ 12-14.

In sum, Unico Marine has the benefit of security for the Arbitration, while JMB Shipping has none. Unico Marine has taken advantage of its ability to incur liens against JMB Shipping's vessels, leaivng JMB Shipping to pay each time they appear. Finally, Unico Marine has only a

single asset, of which it is actively trying to divest itself.  After incurring unpaid liens on JMB Shipping's vessels, Unico Marine is now attempting to liquidate its sole remaining assets.  The only thing preventing this is JMB Shipping's attachment of those assets, without which any arbitration award against Unico Marine would be worthless. Respectfully, the equities fall resoundingly on the side of JMB Shipping, and strongly favor maintaining the attachment.

## **CONCLUSION**

For all the foregoing reasons, the attachment obtained by JMB Shipping should be maintained, and Defendant's motion to vacate should be denied in all respects.


Dated: New York, New York
      December 23, 2021

By:   /s/ John Kissane_____
John G. Kissane
Celinda J. Metro
Watson Farley & Williams LLP
250 West 55th Street
New York, New York 10019
Tel: (212) 922-2200
Fax: (212) 922-1512
Email: jkissane@wfw.com
      cmetro@wfw.com

*Attorneys for Intervenors JMB Shipping ATB 284, LLC, JMB Shipping ATB 205, LLC, and JMB Shipping ATB 220, LLC*
