UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GLANDER INTERNATIONAL BUNKERING
INC.,                                                                       :       21 CIV 6830 (WFK)(TAM)

               Plaintiff,                              :       ECF CASE

   - against -                                                       :

M/V TERESA (IMO 9175016), *in rem*            :

              Defendant.                             :
------------------------------------------------------------X
E.N. BISSO & SON, INC.,
                                                                                :
             Intervening Plaintiff,
                                                                                :
M/V TERESA (IMO 9175016), *in rem,* BARGE
ACADIA (O.N. 1049252), *in rem*, and UNICO    :
MARINE SERVICES LLC, *in personam*,
                                                                                :
             Defendants.
------------------------------------------------------------X
JMB SHIPPING ATB 284, LLC, JMB SHIPPING,
ATB 220, LLC, and JMB SHIPPING ATB 205,    :
LLC,
             Intervening Plaintiffs,         :

UNICO MARINE SERVICES LLC, *in personam*,   :

             Defendants.                            :
------------------------------------------------------------X

**DEFENDANT UNICO MARINE SERVICES LLC'S
RESPONSES TO INTERVENING PLAINTIFFS'
<u>PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

Pursuant to this Court's Order dated February 9, 2022 (ECF No. 65), Defendant, Unico Marine Services LLC ("Unico Marine") submits these responses to Intervening Plaintiffs' ("JMB") proposed Findings of Fact and Conclusions of Law (ECF No. 66) in relation to Unico

Marine's Motion to Vacate Rule B Attachment Order (ECF No's. 32-34)("Motion to Vacate") and Motion for Interlocutory Private Sale of Vessels (ECF No's. 50-53)("Sale Motion").

JMB's proposed findings are not properly limited to proposed findings of fact and conclusions of law. Instead, they are more properly construed as a further argument in opposition to Unico Marine's Motion to Vacate and Sale Motion. As set forth below, the JMB proposed findings fail in numerous instances to cite any evidence in the record in support of the proposed factual findings and they otherwise, misconstrue precedent and miss the mark of the submission ordered by the Court.

### Unico Marine's Reply to Various of JMB's Proposed Findings of Fact[1]

4. *Unico Marine appointed an agent for service in the Eastern District of New York after JMB Shipping filed its complaint and obtained a maritime attachment. ECF No. 39-1 (Declaration of Michael Vitt) ¶15.*

**Response:** This is a red herring. Unico Marine has not argued that its appointment of an agent for service of process in the Eastern District of New York has any bearing on the Motion to Vacate. Rather, it was done in order to avoid other parties with alleged claims taking the same ill-advised path as JMB by ignoring Unico Marine's registration to do business in New York and appointment of an agent for service of process in the convenient adjacent district of the Southern District of New York.

5. *Unico Marine does not have an office, operations or presence within the Eastern District.*

6. *Unico Marine has not engaged in systematic and continuous business activities in the Eastern District.*

---

[1] JMB's Proposed Findings of Fact are reprinted in italics.

[2]

**Response:** Although JMB fails to cite to any evidence in the record in support of these proposed findings of fact, the proposed findings are wholly irrelevant to Unico Marine's Motion to Vacate since these are not facts that Unico Marine has sought to establish. Moreover, the precedent upon which Unico Marine relies, and which shapes the Court's inquiry on Unico Marine's Motion to Vacate the ex parte order issued pursuant to Supplemental Rule B, does not direct the Court to determine if a defendant has an office, operations or presence in a district or whether it has engaged in systematic and continuous business actitivies.

11. *Neither Unico Marine nor JMB Shipping has identified any property of Unico Marine in the Southern District of New York. ECF No. 40 (Davis Decl.) ¶19.*

12. *Unico Marine does not have an office in New York State. See ECF No. 40 (Davis Decl.) ¶18.*

13. *Unico Marine has not alleged that it is engaged in substantial, systematic and continuous business activities in New York State.*

**Response:** To prevail on the Motion to Vacate Unico Marine is <u>not</u> obligated to demonstrate that any of its property is within the Southern District of New York, nor that it has an office in New York State, nor that it is engaged in substantial, systematic and continuous business activities in New York State. Rather, the precedent cited in Unico Marine's Motion to Vacate makes clear that Unico Marine is only required to show that it could be found and was subject to service of process in a convenient adjacent district. As Unico Marine has indisputably proven these facts, the Court may, in its discretion, equitably vacate the ex parte order of maritime attachment.

20. *JMB Shipping has posted cash security of $14 million (held in escrow by BOKF Financial) for Unico Marine's counter-claims in the Arbitration; Unico Marine has not posted*

*any security. ECF No. 40 (Davis Decl.) ¶¶7-9. ECF No. 39 (JMB Opposition to Motion to Vacate) at 9.*

**Response:** JMB's voluntary posting of security for Unico Marine's claims asserted in the Arbitration has no bearing on the Motion to Vacate. As explained in the Motion to Vacate, JMB voluntarily posted such security in direct consequence of its *unilateral* decision to withdraw the vessels from Unico Marine's service under the Charter Parties, and to then itself arrest the Vessels in order to deprive Unico Marine of possession. Further, while Unico Marine has not posted any security in the Arbitration, JMB failed to ever make a request to Unico Marine for the voluntary provision of security or to request that the Arbitration panel direct Unico Marine to post security for JMB's alleged claims.

### Unico Marine's Reply to Various of JMB's Proposed Conclusions of Law[2]

3.   *Unico Marine did not have an agent for service of process in the Eastern District at the time of the Attachment.*

**Response:** Whether Unico Marine had an agent for service of process in the Eastern District of New York has no bearing on the Motion to Vacate. However, Unico Marine did have an agent for service of process in the Southern District of New York at the time of the maritime attachment, which the JMB and its counsel failed to advise the Court when it sought the ex parte order. JMB's failure to fully advise the Court of the material facts concerning Unico Marine's registration to do business in New York and its appointment of an agent for service of process in New York months in advance of JMB's ex parte application was a breach of their heightened duty of candor to the Court.

---

[2] JMB's Proposed Conclusions of Law are reprinted in italics.

[4]

    5.    *There was and is no legal bar to the Attachment.*

**Response**:  While not construed as a legal bar to issuance of a maritime attachment, JMB's failure to advise the Court that Unico Marine had an agent for service of process in the Southern District of New York at the time of the maritime attachment may serve the same function if the Court finds that their lack of candor should result in the equitable vacatur of the ex parte maritime attachment order.

    6.    *Where the conditions for an attachment under Rule B exist, the "attachment may be vacated only in certain limited circumstances." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 444 (2d Cir. 2006) (emphasis added), abrogated by Shipping Corp. of India v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009).*

**Response**:  It is incorrect to assert that *Aqua Stoli* was "abrogated" by *Shipping Corp. of India* since the latter decision only reversed the Second Circuit Court of Appeals' former decision in *Winter Storm* permitting maritime attachment of electronic wire remittances passing through New York intermediary banks.  *See Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002).  *Aqua Stoli* remains valid law as concerns the grounds upon which a court may equitably vacate an ex parte maritime attachments order.

    8.    *The rule in the Second Circuit is that the appointment of an agent in the district is insufficient to prevent an attachment. Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd., 476 F.Supp. 119, 124 (S.D.N.Y. 1979).*

**Response**:  JMB's citation to *Integrated* for the limited assertion that the mere appointment of an agent is insufficient to prevent an attachment misleadingly fails to note that appointment of an agent *coupled* with registration to do business within the state has long been a foundation within

[5]

the Second Circuit to create a sufficient presence for purposes of Supplemental Rule B to prevent a maritime attachment.

17. *In d'Amico Dry d.a.c. v. McInnis Cement Inc., 469 F.Supp.3d 185 (S.D.N.Y. 2020), the court refused to vacate a Rule B attachment of charterer's property because, although charterer was subject to specific personal jurisdiction in New York, the charterer was not "found within the district" because it did not have an agent to accept service of process in the Southern District.*

18. *In McInnis, the court concluded the defendant charterer was "unquestionably subject to specific jurisdiction in this district" where the defendant "entered into a charter party to deliver multiple loads of cement into New York… [as] part of a broader pattern of business activity directed at New York…". Id. at 189 (observing arbitration clause in charter party providing any arbitration would occur in New York, subject to New York law, was "direct evidence of [charterer's] purposeful availment of the benefits and protections of the state's laws.").*

19. *The McInnis court also noted that the defendant charterer had agreed in the charter party to arbitrate disputes in New York. Id. at 189.*

20. *"Nevertheless, the attachment order must stand if Plaintiff could not… have served Defendant with process within this district at the time the action was commenced." Id. (concluding charterer "was not amenable to service… and therefore could not have been found[] within this district.").*

Response: JMB disingenuously describes the *d'Amico Dry* decision in its proposed findings. The relevant passage from the decision (in its full context) is as follows:

> McInnis Canada is unquestionably subject to specific personal jurisdiction in this district. The Second Circuit has held that a single shipment of product into New York, combined with other business activity aimed at the state, such as maintaining a website accessible to New York consumers, offering products for sale into the

state, and facilitating the sale of products into the state, creates personal jurisdiction in New York. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 165-66 (2d Cir. 2010). Here, McInnis Canada entered into a charter party to deliver multiple loads of cement into New York, and that transaction appears to be part of a broader pattern of business activity directed at New York, as evidenced by McInnis Canada financing the construction of a $ 100 million shipping terminal in the Bronx. *See* Ouellet Decl. ¶ 10. Finally, the Court notes that the charter party contains an arbitration clause providing that any arbitration would occur in New York, subject to New York law. Compl., Ex. 1 (Dkt. 1-1) ¶ 35. The arbitration clause is, therefore, direct evidence of McInnis Canada's purposeful availment of the benefits and protections of the state's laws. Because the present dispute relates to McInnis Canada's contacts with this district, it is fairly subject to specific personal jurisdiction here.

Nevertheless, the attachment order must stand if Plaintiff could not, with reasonable diligence, have served Defendant with process within this district at the time the action was commenced. *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105, 112 n. 4 (2d Cir. 2009) ("The time for determining whether a defendant is 'found' in the district is set at the time of the filing of the verified complaint that prays for attachment and the affidavit required by Rule B(1)(b)."). The attaching party prevails on the service prong if it can show that it neither knew nor "ought to have known" that the attached party could have been served within the district. *See Seawind Compania, S. A. v. Crescent Line, Inc.*, 320 F.2d 580, 582-83 (2d Cir. 1963).

*Id.* at 189 (emphasis added).

Contrary to JMB's misleading quotation from the decision, *d'Amico Dry* the above-quoted passage from the decision clearly supports Unico Marine's Motion to Vacate since it is undisputed that JMB should have found[3] that Unico Marine could be found in the Southern District of New York for purposes of service of process. Furthermore, the underlying arbitration between Unico Marine and JMB was already pending at the time that JMB filed the Verified Complaint and motion for ex parte order of maritime attachment, amply demonstrating that service was not only possible but had already been performed.

---

[3] It is in fact likely that JMB had actual knowledge that Unico Marine had an agent for service or process in the Southern District of New York and yet failed to disclosed this fact to the Court at the time it sought ex parte relief. Regardless, unlike the defendant in *d'Amico Dry*, the fact that Unico Marine was amenable to service of process in the Southern District of New York at the time JMB filed its Verified Complaint in this action. *D'Amico Dry*, 469 F.Supp.3d at 190 ("McInnis Canada has no corporate office or officer in this district, nor has it registered or designated an agent to receive process in this district").

[7]

*21.   Here, it is undisputed that JMB Shipping has a valid prima facie admiralty claim against Unico Marine, arising from Unico Marine's breaches of charters (i.e., the 205 Agreement, 220 Agreement and 284 Agreement), the (sic) Unico Marine's property (the M/V TERESA and barge ACADIA) may be found within the Eastern District, and there is no other legal bar to attachment.*

**Response**:  Although Unico Marine has not sought vacatur of the ex parte order on the basis that JMB has not asserted a valid prima facie admiralty claim, it has not conceded that JMB Shipping has a valid prima facie admiralty claim and such determination will ultimately be made by the arbitration panel.

*24.   The issue before the Court is whether the valid maritime attachment should be vacated.*

**Response**:   The issue before the Court on Unico Marine's Motion to Vacate is not as limited as JMB posits with this proposed finding.  Rather, the Motion to Vacate also raises the question of whether the purportedly valid maritime attachment should be vacated on the basis that it might not have been granted in the first place had JMB made full and frank disclosure of material facts to the Court at the ex parte stage concerning Unico Marine's New York registration and appointment of an agent for service of process in the Southern District.

*25.   The limited circumstances for vacatur of attachment discussed in Aqua Stoli do not exist here.*

**Response**:  It is indisputable that all of the circumstances for the vacatur of a maritime attachment based upon Unico Marine's presence in the convenient adjacent Southern District of New York exist in this case.

26.     First, Unico Marine is not "subject to suit in a convenient adjacent jurisdiction" – the Southern District of New York, Unico Marine claims – and not subject to in personam jurisdiction in that district.

**Response**: JMB's proposed finding is utterly at odds with the evidence in the record before the Court on Unico Marine's Motion to Vacate.  Although JMB failed to meet its heightened duty of candor to the Court by failing to advise it of facts it plainly knew at the time it filed its motion for ex pare relief, it is undisputed that as of October 22, 2021 Unico Marine had registered to do business in New York and appointed an agent for service of process within the Southern District of New York, but it had also agreed to arbitrate in New York in relation to the claims asserted by JMB.  Thus, JMB's proposed finding that Unico Marine is not subject to suit in the convenient, adjacent Southern District of New York, and therefore subject to in personam jurisdiction in that district is meritless.

27.     Specifically, Unico Marine's appointment of an agent for service is alone insufficient to establish that a defendant is found within that district.  See STX Panocean, 560 F.3d at 131.

**Response**:  See response to numbers 8 and 17-20, *supra*.

28.     The court in STX then turned to New York law to determine whether registration to do business subjects the registering company to general jurisdiction in New York.  Id.

29.     A recent New York Court of Appeals decision confirms that registration and appointment of an agent pursuant to New York Business Corporation Law §1301 does not subject the registrant to general personal jurisdiction in New York. Aybar, 2021 WL 4596367 at *2.

**Response**:  The decision in *Aybar v. Aybar,* No. 54, 2021 WL 4596367, at *2 (N.Y. Oct. 7, 2021) has not confirmed that registration in the state and appointment of an agent for service of

[9]

process is insufficient to render that party "found" within the district for purposes of Supplemental Rule B.  In any event, Unico Marine has specifically consented to jurisdiction in New York by virtue of the arbitration provision in the Charter Party contracts – a point which JMB has failed to address.

30. *Further, JMB Shipping has not identified any property of Unico Marine located in New York to adequately secure its claims against Unico Marine, by attachment or otherwise. Likewise, Unico Marine has not identified any property in New York other than the Vessel.*

**Response**: Whether Unico Marine has property in New York sufficient to secure JMB's claims is wholly irrelevant to the Motion to Vacate – and JMB fails to cite any authority for this proposed finding.

31. *Unico Marine has posted no security in the Arbitration, and JMB Shipping's retention of a small amount of fuel and lube oil onboard were setoff as against JMB Shipping's claim.  In contrast, JMB Shipping was required to post security of $14 million to secure the claims of Unico Marine under the Bareboat Charter Agreements in order to obtain the release and return of JMB Shipping's own vessels.*

**Response:**  Prior to seeking an ex parte order in this action, JMB never requested Unico Marine post security in the arbitration, informally or by way of an application to the arbitrators – and the arbitrators have not ordered Unico Marine to pose security.    JMB's proposed finding that it was "required" to post security of $14 million to secure the claims of Unico Marine under the Charter Parties in order to obtain the release and return of JMB Shipping's own vessels is wholly misleading, disingenuous and self-serving.   The *only* reason why JMB *voluntarily* posted security of $14 million on Unico Marine's claims is because it was the only means by which it could obtain release of the vessels from the arrest that JMB itself unilaterally orchestrated in an

ill-conceived scheme to repossess them from Unico Marine. Thus, the security the JMB entities posted was entirely a consequence of their own actions, not because of any demand for such security by Unico Marine.

33. *Unico Marine has not provided any evidence that it has the financial ability to satisfy the claims identified as pending against it.*

**Response:** JMB's proposed finding is irrelevant to the Motion to Vacate. There is no authority for the proposition that a defendant need prove a "financial ability" to satisfy the claims asserted against it to obtain vacatur of an ex parte order issued based on a plaintiff's abusive use of Supplemental Rule B attachment and/or in circumstances where the defendant can be "found" for Supplemental Rule B purposes in a convenient adjacent district.

34. *Even if there were grounds for equitable vacatur under Aqua Stoli, that decision does not compel vacatur; rather, this Court has "equitable discretion to determine whether vacatur is appropriate." Hyundai Merchant Marine Co. Ltd. v. Oceanic Petroleum Source Ptd. Ltd., 656 F.Supp.2d 416, 420 (S.D.N.Y. 2009).*

35. *In Hyundai Merchant Marine, the court concluded "the balance of equities weighs against vacatur" on the grounds, inter alia, "there is a meaningful possibility that any judgment on the merits procured by plaintiff in the [] arbitration will go unsatisfied." 656 F.Supp.2d at 420. See also Boland Marine & Industrial, LLC v. Bouchard Transp. Co., Inc., No. 1:20-CV-66-LY-ML, 2020 WL 10051743, at \*11 (W.D. Tex. Feb. 28, 2020) (concluding equity disfavored vacatur of maritime attachment where, inter alia, defendant appeared deeply insolvent).*

**Response**: *Hyundai Merch. Marine Co. v. Oceanic Petroleum Source Pte, Ltd.*, 656 F. Supp. 2d 416 (S.D.N.Y. 2009) is inapposite and based on radically dissimilar facts to those involved in this case. In *Hyundai,* the defendant's *only argument* was that, having registered to

do business in New York, it was present in the Northern District by virtue of its designation of the Secretary of State in Albany as an agent for service of process. However, the defendant lacked substantiality as a company, having no home office and being "in essence, a shell company." *Hyundai*, 656 F.Supp. 2d at 419. Moreover, unlike Unico Marine, the defendant in Hyundai had failed to appoint an arbitrator in the arbitration and was "deemed to be in default in that proceeding." *Id.* at 418. *Boland* involved the defendant's failure to pay an undisputed invoice for routine services provided to its vessels. The defendant did *not* make an equitable vacatur argument during the Rule E(4)(f) hearing and, therefore, *waived* it. In any event, Bouchard really did not have a vacatur argument to make since the "nearby" district where it was allegedly present was not "adjacent." Therefore, neither case supports JMB's arguments based on the equities.

36. Here, the equities disfavor vacatur.

37. First, JMB Shipping has no other source of security for its claims, as detailed above.

38. Further, Unico Marine does not dispute that the M/V TERESA and barge ACADIA are its sole remaining assets. Unico Marine has identified an additional $560,572 in potential additional liens against the vessel, points to no other assets or revenue streams, and has not posted security to obtain the release of its property.[4]

39. Additionally, a significant portion of JMB Shipping's claims in this action are based on debts of Unico Marine that JMB Shipping has paid in order to extinguish liens incurred by Unico Marine against JMB Shipping's vessels when Unico Marine left creditors unpaid.

**Response**: JMB is not entitled to any relief based on the "equities" since it came to this court with unclean hands due to its lack of candor when filing the *ex parte* application. *See Gaul*

---

[4] Although not relevant to the issues before the Court on the Motion to Vacate, Unico Marine disputes JMB's naked assertions that the M/V TERESAA and Barge ACADIA are its "sole remaining assets" and that it has no other revenue streams

[12]

*v. Chrysler Fin. Servs. Ams. LLC*, 657 Fed. Appx. 16, 18 (2d Cir. 2016) (citing *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 129 (2d Cir. 2009) (the unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief" . . . )).

Equitable vacatur is available in Rule B attachment cases.  See *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105, 113 (2d Cir. 2009).  Vacatur of an ex parte attachment order is appropriate in circumstances where the defendant "is subject to suit in a convenient adjacent jurisdiction." *Aqua Stoli*, 460 F.3d at 444.  JMB has cited no precedent standing for the proposition that in a "paradigmatic" case such as this one, where the plaintiff is subject to suit in a convenient adjacent district, e.g. the Southern District, which is "across the river" from the district in which the court is located, e.g. the Eastern District, equitable vacatur should be denied because the plaintiff will otherwise be without security or its claims.

Vacatur of the Rule B attachment of the TERESA and ACADIA would not deprive JMB of jurisdiction over Unico Marine for purposes of the *already* pending New York arbitration, or for enforcement of any unlikely arbitration award it might obtain.  Indeed, if the "primary object" of a Rule B attachment is to obtain jurisdiction over a "foreign" defendant (*see Aqua Stoli*, 460 F.3d at 437) and security can only be obtained as an adjunct to obtaining jurisdiction (*see Chilean Line Inc. v. U.S.A.*, 344 F.2d 757, 760 (2d Cir. 1965); *Seawind Compania, S.A. v. Crescent Line,* 320 F.2d 580, 582 (2d Cir. 1963); *D/S A/S FLINT v. Sabre Shipping Corp.*, 228 F.Supp. 384 (E.D.N.Y. 1984) *aff'd sub nom. Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50 (2d Cir. 1965), then Unico Marine's registration to conduct business in New York coupled with its appointment of an agent for service of process in New York City and its consent to

arbitrating in the Southern District of New York tilt the equities heavily in favor of vacating the ex parte Rule B attachment order.

52. *The requirements of 28 U.S.C. §§2001 and 2004 have not been satisfied so as to allow the Court to issue or approve a sale free and clear of all liens. See Dietrich v. Key Bank N.A., 72 F.3d 1509, 1516 (11th Cir. 1996) ("Section 2001 specifically requires appraisal at judicially-supervised private sales…"); see, e.g., Goldman Sachs Bank USA v. M/Y Natita, 2017 WL 11221117 (S.D. Fla. Dec. 8, 2017) (granting unopposed motion for order confirming private sale of vessel, ordering gross sale amount be distributed "to each of the three appraisers appointed by the Court in accordance with 28 U.S.C. §2001(b)…").*

**Response**: At no time prior to filing its proposed findings did JMB object to the private sale of the Vessels on the basis of the procedures set out in 28 U.S.C. §§2001 and 2004, despite having been given ample and repeated opportunities to raise such issues at the hearing conducted by the Court on February 8, 2022.  In fact, JMB has waived any objection to the private sale of the Vessels.  *ECF No. 61.*  Moreover, the sale confirmation process under 28 U.S.C. § 2001 is separate and distinct from the Court's order approving the private sale.  Section 2001 provides, in relevant part:

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. . . .

28 U.S.C. § 2001(b).

57. *Generally, the private sale of a vessel would not result in the sale of the vessel free and clear of all liens, and the owner would indemnify the buyer for any such liens.*

[14]

**Response**: JMB cites no authority for this proposed finding in the context of a vessel sold pursuant to a private sale ordered by the Court on stipulation of all concerned parties that the sale price is at fair market value and providing that the proceeds of the sale be deposited in the court registry as a substitute *res*.

*58.    Neither Rule E nor Local Admiralty Rule E.4 provides for or requires the Court order a private sale of an attached or arrested vessel free and clear of all liens, encumbrances and/or claims.*

**Response**:  Neither Rule E nor Local Admiralty Rule E.4 prohibit the private sale of a vessel free and clear of all liens, encumbrances and/or claims.

*59.    The Court is not required to approve a private sale at all, much less a private sale that renders the vessel free and clear of all liens, encumbrances and/or claims.*

**Response**:  The private sale of a vessel may be approved by the court on "such terms and conditions as the court approves." 28 U.S.C. § 2001(b).

*61.    A private sale of a vessel would not result in the sale of the vessel free and clear of all liens. Indeed, Unico Marine's counsel acknowledged that the Vessel may be subject to additional maritime liens from the period prior to Unico Marine's ownership of the Vessel. (Tr. 31:2-7).*

**Response**: JMB's proposed finding ignores the fact that any lien claimant would have to assert a claim in this action on or before whatever bar date the Court may set, and such lien claims would be adjudicated, *in rem*, either against the Vessels themselves, or against the cash proceeds from the private sale, as substitute *res* for the Vessels.

*62.    Since the private sale of the Vessel agreed by Unico Marine, prior to this action, would not have resulted in a sale of the Vessel free and clear of all liens, claims and encumbrances,*

[15]

*Unico Marine (and the unidentified Purchaser) should not have the benefit of a sale free and clear of all liens, particularly where such a sale would render JMB Shipping under-secured and with no viable alternative means to collect on any judgment.*

63. *If Unico Marine desires to effect the proposed sale, and, as it has declared under penalty of perjury, "Unico Marine has no intention of ceasing business, nor is it insolvent or judgment proof, and it certainly is not attempting to become judgment proof" (ECF No. 34 (Valentini Decl. ¶38)), then Unico Marine should not be permitted to sell the Vessel free and clear of all liens, claims, and encumbrances; instead Unico Marine should be ordered to deposit the full sale proceeds into the Registry of the Court as security for the claims currently pending in this action.*

**Response**: JMB's proposed findings are argumentative and illogical. The Vessels are under arrest and subject to being sold at judicial auction unless the private sale is approved. All concerned parties, including JMB, have agreed that the private sale is in the best interest of the parties. If the Vessels are not sold free and clear of all liens and encumbrances – as they would be at a public auction – it is entirely likely the purchase will cancel the transaction. The Vessels will then have to be sold at public auction – which will generate an inferior return to the prejudice of all concerned parties.

64. The order requested by Unico Marine in its Sale Motion would have the following effects:

- Unico Marine would have no other assets or property (conceding the Vessel represents its only asset);

- The purchase price ($3.35 million) would be deposited into the Court's Registry, available to satisfy any claims against Unico Marine and/or the Vessel;

- Unico Marine has identified over $560,572 in maritime liens, and has conceded there may be additional, unknown, liens against the Vessel;

- Unico Marine claims it has incurred over $283,000 in *custodia legis* costs (and presumably those amounts are increasing);

- The purchase price, less the known maritime liens and custodia legis costs, would leave approximately $2.5 million available for distribution to JMB Shipping for its maritime claim; and

- JMB Shipping would therefore be under-secured by nearly $1.2 million with respect to its claims of $3.7 million (as of the date it filed its complaint), which claims include liens Unico Marine impermissibly accrued against JMB Shipping's vessels which JMB Shipping paid to avoid arrest.

**Response**: JMB's proposed findings are improper argument, particularly given it waived any objection to the Sale Motion. JMB is not entitled to any security if the Motion to Vacate is granted, as it should be, in which case *all* of its proposed findings become irrelevant because it would have no standing. Although irrelevant to the Sale Motion, it is black letter law that JMB's grossly overstated *in personam* damage claims against Unico Marine are inferior to any maritime liens against the Vessels.

65.     *Effectively JMB Shipping would be required to pay two sets of Unico Marine's maritime liens – first, the liens incurred by Unico Marine as against JMB Shipping's vessels, and second, the liens incurred by Unico Marine as against the M/V TERESA and barge ACADIA.*

66.     *As previously noted, JMB Shipping has no other security – the guarantor has moved to dismiss the SDNY Action on the guarantee from Unico Commodities LLC, JMB Shipping's claims already reflect a setoff of the fuel and lube oil onboard the vessels repossessed by JMB Shipping, Unico Marine has posted no security in the Arbitration (whereas JMB Shipping has posted $14 mil.) and Unico Marine has no other property or assets.*

**Response**: JMB's proposed findings are improper argument, particularly given it waived any objection to the Sale Motion. Moreover, whether JMB is secure to the full extent or its claims or not is wholly irrelevant to the Sale Motion.

Dated: February 14, 2022

                      The Defendant,
                      UNICO MARINE SERVICES LLC

By: _____
    Patrick F. Lennon, Esq.
    Keith W. Heard, Esq.
    Kevin J. Lennon, Esq.
    LENNON, MURPHY & PHILLIPS, LLC
    The Gray Bar Building
    420 Lexington Avenue, Suite 300
    New York, NY 10170
    Tel:   (212) 490-6050
    Fax:   (212) 490-6070
    Email:  plennon@lmplaw.net
             kheard@lmplaw.net
             klennon@lmplaw.net

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2022, a copy of the foregoing was filed electronically on the Court's CM/ECF docketing system. Notice of this filing will be sent by e-mail to all parties and all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

*/s/ Patrick F. Lennon*
Patrick F. Lennon
