```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GLANDER INTERNATIONAL BUNKERING        :
INC.,                                  :
                                       :
                                       :
              Plaintiff,               :
       v.                              :        DECISION & ORDER
                                       :        1:21-CV-06830 (WFK) (TAM)
M/V TERESA (IMO 9175016), in rem,      :
                                       :
              Defendant.               :
------------------------------------------------------------X
------------------------------------------------------------X
E.N. BISSO & SON, INC.,                :
                                       :
              Intervening Plaintiff,   :
       v.                              :
                                       :
M/V TERESA (IMO 9175016), in rem, BARGE :
BG ACADIA (O.N. 1049252), in rem, and UNICO :
MARINE SERVICES LLC, in personam,      :
                                       :
              Defendants.              :
------------------------------------------------------------X
------------------------------------------------------------X
JMB SHIPPING ATB 284, LLC, JMB SHIPPING :
ATB 220, and JMB SHIPPING ATB 205,     :
                                       :
              Intervening Plaintiffs,  :
       v.                              :
                                       :
UNICO MARINE SERVICES LLC, in personam, :
                                       :
              Defendant.               :
------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

On December 16, 2021, JMB Shipping ATB 284, LLC, JMB SHIPPING, ATB 220, LLC, and JMB Shipping ATB 205, LLC (collectively, "JMB Shipping") intervened in this action to obtain security for their claims against Unico Marine for breach of bareboat charter party agreements in a pending arbitration. That same day, the Court issued a writ of attachment on behalf of JMB Shipping against the M/V TERESA and Barge ACADIA, which Defendant Unico Marine Services, LLC ("Unico Marine") moved to vacate. On January 14, 2022, Unico Marine also moved for this Court to order the interlocutory private sale of the TERESA and ACADIA. The Court held a hearing pursuant to Supplemental Rule E(4)(f) on February 8, 2022. For the reasons

1

discussed below, Defendant's motion to vacate is GRANTED, and Defendant's motion for interlocutory sale is GRANTED in part and DENIED in part.

## BACKGROUND

1. *Plaintiff Glander International Bunkering Inc.*

Plaintiff Glander is engaged in the business of selling and supplying marine fuel and other supplies. *See generally* Glander Compl., ECF No. 1. Defendant Vessels, M/V TERESA and Barge ACADIA, form a Liberian-flagged tug and barge combination. Defendant Unico Marine is in the marine transportation business and is the registered owner of the TERESA and ACADIA, which are currently located within the Eastern District of New York. According to JMB Shipping, Unico Marine does not own any property other than the TERESA and ACADIA. Davis Decl. ¶ 19, ECF No. 40.

On December 9, 2021, Glander filed a Complaint against Defendant M/V TERESA, *in rem*, for breach of maritime contract and to enforce maritime liens pursuant to 46 U.S.C. § 31342.[1] *See* Glander Compl. ¶ 6. According to the Complaint, Glander provided marine fuel to the M/V TERESA on the order of the owner, Unico Marine. *Id.* Glander alleges Unico Marine failed to pay $599,635.74 for marine fuel, late charges, and interest. *See id.* ¶¶ 7-8. Those invoices remain unpaid. *See* Unico Marine Findings, ECF No. 67. Plaintiff thus asked the Court to: (1) issue a warrant for arrest of the vessels pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("the Supplemental Rules"); (2) find that Plaintiff holds valid maritime liens against the vessels; (3) enter an order for $599,635.74 and for sale of the vessels to satisfy the judgment; and (4) award costs and expenses. *See id.* at 4.

---

[1] Glander alleged that jurisdiction and venue were proper because the vessel was in the navigable waters of the Eastern District of New York. *See* Glander Compl. ¶ 3, ECF No. 1.

On December 10, 2021, the Court issued the warrant of arrest *in rem* for the vessels. *See* Dec. 10, 2021 Order, ECF No. 10.

2. *Plaintiff JMB Shipping*

JMB Shipping owns three vessels: the M/V RUBIA, the M/V BELLA, and the M/V MORENA, together with their accompanying barges. JMB Shipping Compl. ¶¶ 2-4, ECF No. 16. Unico Marine chartered these units through late December 2021 or mid-February 2022 with payments due in monthly installments pursuant to three separate bareboat charter party contracts. *Id.* ¶¶ 10, 16, 28.

JMB Shipping alleges Unico Marine failed to make payments for each of the units beginning in October 2021, failed to maintain the BELLA and MORENA units, and permitted a lien to accrue against the BELLA, which JMB Shipping paid, all in violation of the charter agreements. *Id.* ¶¶ 11, 18, 20, 22, 29, 31. JMB Shipping alleges that after Unico Marine expressed an intent to breach the RUBIA charter agreement, Unico Marine "redelivered" the unit "by effectively abandoning" it at a dock in New Jersey. *Id.* ¶ 12. JMB Shipping then retook possession of the ship under protest. *Id.* JMB Shipping also retook possession of the BELLA and MORENA after Unico's alleged breaches of those contracts, pursuant to its rights under the agreements.[2] *See* JMB Shipping Compl., Ex. 1 ¶ 20.

Each of the charter agreements requires any claim arising out of the agreement to "be brought in arbitration in accordance with the rules of the Society of Maritime Arbitrators, Inc. in New York, NY." *See id.*, Ex. 1 ¶ 24. On or about October 14, 2021, Unico Marine commenced

---

[2] The agreements state, "If CHARTERER shall fail to pay any charter hire due for more than three (3) banking days after the due date thereof (subject to notice and cure period), or if CHARTERER shall fail to perform or comply with any other material provision of this AGREEMENT,. . . then OWNERS may, at their option, withdraw the VESSEL from the service of the CHARTERER and terminate this AGREEMENT by giving written notice to CHARTERER. . .; and upon giving such notice or at any time thereafter, OWNERS may retake possession of the VESSEL, wherever found, without prior demand and without legal process." JMB Shipping Compl.

arbitrations under all three charter agreements, which were consolidated on December 14, 2021. *See* Davis Decl. ¶¶ 10, 11; *see also* Unico Marine Mem. 2, ECF No. 33. In these arbitrations, Unico Marine asserted claims of $18,855,118.00 in damages against JMB Shipping, while JMB Shipping asserted claims of $3,770,157.00 against Unico Marine. *Id*. JMB Shipping posted a $14 million bond to secure any judgment stemming from Unico Marine's counterclaims in the arbitration and to obtain the release of two of JMB Shipping's vessels. Mot. for Writ of Attach. ¶ 5, ECF No. 18. Unico Marine claims neither JMB Shipping nor the arbitrators have demanded Unico Marine put up security for the claims asserted against it in the arbitration. *See* First Valentini Decl. ¶ 35, ECF No. 34. According to Unico Marine, this is because JMB already has security for its claims in the form of seized necessaries from the BELLA and MORENA[3] and a guarantee from Unico Commodities LLC, a corporate affiliate of Unico Marine. Unico Marine Mem. 3.

Local Admiralty Rule E.2 states "[w]hen a vessel . . . has been arrested, attached, or garnished . . . anyone having a claim against the vessel or property is required to present the claim by filing an intervening complaint." Accordingly, on December 16, 2021, JMB Shipping intervened in this action "for the purposes of obtaining security" for its claims against Unico Marine for breach of bareboat charter party agreements in the pending arbitration. Mot. for Writ of Attach. ¶ 7; *see also* JMB Shipping Compl. ¶ 1. JMB Shipping's Complaint seeks: (1) a writ of attachment against Unico Marine's property within the Eastern District (*i.e.*, the TERESA and ACADIA) pursuant to Supplemental Rule B, and (2) damages for lost profits, mitigation efforts,

---

[3] In the dispute between JMB Shipping and Unico, JMB arrested the BELLA unit in the Eastern District of New Orleans and the MORENA unit in the Middle District of Florida, seeking possession and termination of the charter agreement. First Valentini Decl. ¶ 21. Unico Marine has counterclaims in the arbitration. Reply Mem. 1, ECF No.41. In order to obtain release of the BELLA, which JMB owned, JMB Shipping offered, and Unico Marine accepted, security for Unico Marine's damages claims arising from the termination of the charter agreement. First Valentini Decl. ¶ 21.

4

and attorneys' fees and costs, totaling $3,770,157.00. JMB Shipping Compl. at 11. In support of its application for the *ex parte* Rule B maritime attachment order, and as required by Supplemental Rule B(1)(b), JMB Shipping filed the Declaration of John G. Kissane, its counsel of record, attesting that Unico Marine could not be "found" within the Eastern District of New York. Attorney Kissane represented that he conducted a search of corporate records and business registrations in the State of New York which "did not reveal that Unico Marine has registered to do business in New York or has any agent for service of process in this district." Kissane Decl., ECF No. 17.

On December 16, 2021, the Court issued a Writ of Attachment on behalf of JMB Shipping pursuant to Supplemental Rule B against the TERESA and ACADIA for up to $3,770,157.00. *See* Order for Writ of Attach., ECF No. 21. On that same day, JMB Shipping notified the Court that Unico Marine intended to sell the TERESA and possibly the ACADIA "in order to avoid JMB Shipping's valid maritime claim." Mot. for Writ of Attach. ¶ 4. Unico Marine acknowledged its intent to sell the vessels when possible but stated "[t]here is nothing nefarious about [the] sale" and noted that Unico Marine had contracted to sell the vessels before Glander had initiated this proceeding. Unico Marine Reply at 2, ECF No. 41.

On December 20, 2021, Defendant Unico Marine filed a motion to vacate JMB Shipping's Writ of Attachment pursuant to Supplemental Rule E(4)(f) and Local Rule E.1. *See* Mot. to Vacate, ECF No. 32. In support of its motion to vacate, Unico Marine filed a Declaration of Riccardo Valentini, attesting to Unico Marine's New York registration and appointment of an agent for service of process in the Southern District of New York. *See* Second Valentini Decl., ECF No. 35. As of October 22, 2021, Unico Marine was registered with the New York State Department of Corporations to conduct business in the State of New York as a

foreign limited liability company. *See* First Valentini Decl. As part of that registration, Unico Marine also appointed a registered agent for service of process in the Southern District of New York. *See id*. However, at the time this Court issued a Writ of Attachment on behalf of JMB Shipping, Unico Marine did not have an agent for service of process in the Eastern District of New York. JMB Shipping Compl. ¶ 41. Unico Marine has since appointed an agent for service in the Eastern District of New York. Vitt Decl. ¶ 15, ECF No. 39-1.

   3. *Plaintiff E.N. Bisso*

On December 16, 2021, E.N. Bisso & Son, Inc. ("E.N. Bisso") filed a complaint against the TERESA and ACADIA, *in rem*, and Unico Marine for breach of maritime contract. *See* E.N. Bisso Compl., ECF No. 19. According to the complaint, E.N. Bisso provided tug services to the TERESA and ACADIA for which Unico failed or refused to pay. *Id*. ¶ 8. E.N Bisso therefore requested that this Court: (1) issue a warrant of arrest of the TERESA and ACADIA, (2) find E.N. Bisso's maritime liens valid, and (3) issue a judgment of $36,288.30, plus costs and expenses. *Id*. at 4. On December 17, 2021, the Court issued the arrest warrant. *See* Order, ECF No. 23. On December 20, 2021, E.N. Bisso filed a Notice of Voluntary Dismissal. *See* Notice, ECF No. 27.

   4. *Proposed Sale*

Unico Marine contracted to sell the TERESA and ACADIA pursuant to a Memorandum of Agreement dated December 3, 2021. *See* Second and Third Valentini Decl, ECF No. 62. On January 14, 2022, Unico Marine filed a motion for the interlocutory sale of the TERESA and ACADIA, requesting that the Court issue an order: "1. ordering the interlocutory private sale. . .; 2. ordering that the sale proceeds from such interlocutory sale be deposited into the Registry of the Court. . .; 3. ordering that. . . the M/V TERESA and Barge ACADIA will be the property of

the third-party purchaser, free and clear of all liens, encumbrances, and/or claims; 4. ordering the payment of sale commissions to the sale and purchase brokers; and 5. granting such other and further relief as the Court may deem just and proper. . . ." Mot. for Order of Sale, ECF No. 50. Glander has joined in the motion for sale, while JMB Shipping has stated that it does not object to it. *See* Mot. for Joinder, ECF No. 64; *see also* JMB Shipping Letter, ECF No. 61. Unico Marine has also filed a motion to expedite the sale. *See* Mot. to Expedite, ECF No. 63.

As contracted, the combined sale price of the vessels is $3,350,000.00. According to Unico Marine, Glander's lien of $490,000.00 and the approximately $283,000.00 in *custodia legis* fees will be paid, at least in part, from the proceeds of the proposed sale. Davis Decl. ¶ 24; Third Valentini Decl. ¶ 14. Unico Marine is also aware of approximately $560,572.00 in outstanding balances owed to creditors who could be entitled to claim maritime liens against the vessels. Third Valentini Decl. ¶ 12.

The parties agree that the vessels are wasting assets, subject to deterioration. *See* Third Valentini Decl., ECF No. 62. Unico Marine estimates the cost of keeping the vessels under arrest and attachment at $1,568.53 per day. *See* Third Valentini Decl.; *see also* Mot. to Expedite.

## DISCUSSION

### I. Motion to Vacate

#### a. Legal Standard

Under Supplemental Rule B, "[i]f a defendant is not found within the district when a verified complaint praying for attachment and the [required affidavits] are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process." Fed. R. Civ. P. Supp. R. B(1)(a). If the complainant meets "the filing and service

requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006).

A defendant will be considered "found" within the district in which the plaintiff brings its action if (1) the defendant "can be found within the district in terms of jurisdiction" and (2) if the defendant "can be found for service of process." *STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.*, 560 F.3d 127, 130 (2d Cir. 2009). The first prong, in other words, requires the defendant to have sufficient contacts with the district to meet minimum due process standards. *See Sea Route, Ltd. v. Nat'l Bag & Trading Co.,* No. 07-CV-3873, 2007 U.S. Dist. LEXIS 70617, at *7 (E.D.N.Y. Sept. 24, 2007) (Sifton, J.).

However, "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with" the Supplemental Rules. Fed. R. Civ. P. Supp. R. E(4)(f); *see J.K. Int'l, Pty., Ltd. v. Agriko S.A.S.*, No. 06-CV-13259, 2007 WL 485435, at *2 (S.D.N.Y. Feb. 13, 2007) (Karas, J.).

Specifically, the Court "must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E." *Aqua Stoli*, 460 F.3d at 444. In addition, the Court "may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the

8

plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." *Id*. at 445.

b. Application

Because JMB Shipping has a valid prima facie admiralty claim against Unico Marine, Unico Marine has property in the Eastern District of New York, and there is no statutory or maritime law bar to the attachment, the only *Aqua Stoli* factor presently in dispute is whether Defendant can be found within the district. JMB Shipping must therefore demonstrate that Unico Marine cannot be "found within the district in terms of jurisdiction" or "found for service of process." *STX Panocean*, 560 F.3d at 130.

Although "[f]ederal law defines the requirements necessary for satisfaction of Rule B . . . federal courts look to the relevant state law to determine if those requirements are met." *Id.* at 131-32. Under New York law, while "an agreement to arbitrate disputes in New York constitutes consent to personal jurisdiction in New York." *Shalik v. Coleman*, 975 N.Y.S.2d 741 (2013); *see also Zurich Ins. Co. v. R. Elec., Inc.*, 773 N.Y.S.2d 560 (2004) ("Because the arbitration clause, which selects New York as the place of arbitration, is valid, New York has personal jurisdiction over respondent, and is a convenient forum as a matter of law.").

However, the consent to personal jurisdiction arising from an arbitration clause providing for arbitration in New York "is limited to enforcement of the arbitration award or other arbitration-related proceedings." *Shalik*, 975 N.Y.S.2d at 741 (2013) (citing *Sterling Nat. Bank & Tr. Co. of New York v. S. Scrap Exp. Co.*, 468 F. Supp. 1100 (S.D.N.Y. 1979)). In *Sterling*, the court found that the arbitration clause, which provided for arbitration of disputes arising out of the contracts in New York, did not constitute consent to personal jurisdiction because plaintiff was not a party to the contract containing the arbitration clause. The court distinguished cases

9

concerning orders compelling arbitration, confirming an arbitration award, and staying an action pending arbitration because those orders related to the arbitration. *Sterling*, 468 F. Supp. at 1103. The court further distinguished tort disputes from those "arising out of the contract," which would be subject to arbitration per the contract's arbitration clause.

The present proceedings concerning JMB Shipping's Writ of Attachment and Unico Marine's motion to vacate are "arbitration-related proceedings" that derive from the contracts containing the relevant arbitration clauses. JMB Shipping's maritime liens arise out of disputes concerning those same charter agreements. JMB Shipping also intervened in this action "for the purposes of obtaining security" for its claims against Unico Marine for breach of bareboat charter party agreements in the pending arbitration. Mot. for Writ of Attach. ¶ 7; *see also* JMB Shipping Compl. ¶ 1. As a result, Unico Marine, which has agreed to arbitrate disputes in New York, registered to do business with the New York Secretary of State, and appointed an agent for service of process in the Southern District of New York, has consented to personal jurisdiction in the Southern District of New York.

Unico Marine could also be "found for service of process" at the time JMB Shipping filed its complaint because Unico Marine had appointed an agent for service of process in the Southern District of New York. *STX Panocean*, 560 F.3d at 130. Unico Marine therefore meets the requirements for being "found" in the Southern District of New York for purposes of Supplemental Rule B.

To be found within the Southern District, JMB Shipping argues, is not necessarily to be found within the Eastern District. However, the relevant district for the purposes of Rule B extends beyond the district in which the Court sits to include "a convenient adjacent jurisdiction." *Aqua Stoli*, 460 F.3d at 444. More specifically, a district court may vacate a

10

maritime attachment if "the defendant would be subject to an *in personam* lawsuit in a jurisdiction adjacent to the one in which the attachment proceedings were brought. An 'across the river' case where, for example, assets are attached in the Eastern District but the defendant is located in the Southern District is a paradigmatic example of a case where an attachment should be vacated." *Id*. at 444. This, too, is an "across the river" case because Unico Marine can be "found in the Southern District" and because the Eastern District is a "convenient adjacent jurisdiction" to the Southern District for Supplemental Rule B purposes. *See Far E. Shipping Co. v. Progress Bulk Carriers, Ltd.*, No. 07 CV 11375, 2008 WL 2035788, at *1 (S.D.N.Y. Feb. 8, 2008) (Crotty, J.).

The Court therefore finds that Unico Marine has consented to personal jurisdiction in the Southern District of New York and, under the expansive definition of the relevant district under *Aqua Stoli*, can thus be "found" in the relevant district for purposes of Supplemental Rule B. Because a district court may vacate an attachment if the defendant shows at the Rule E hearing that the defendant is subject to suit in a convenient adjacent jurisdiction, *Aqua Stoli*, 460 F.3d at 445, the Court hereby vacates the Writ of Attachment issued on December 16, 2021.

II. **Motion for Interlocutory Sale**

    a. Legal Standard

A district court, "[o]n application of a party," "may order all or part of the property sold with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if: (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action; (B) the expense of keeping the property is excessive or disproportionate; or (C) there is an unreasonable delay in securing release of the property." Fed. R. Civ. P. Supp. R. E(9)(a). "A showing of only one of

the criteria in Rule E(9)(a)(i) is sufficient for the Court to order an interlocutory sale." *Rowan Companies, Inc. v. M/V FR8 PRIDE,* No. C–12–163, 2012 WL 5465964, at *2 (S.D. Tex. Oct. 30, 2012); *see also First Am. Title Ins. Co. v. M/V Golden Eagle III*, No. CIV.A. 14-1119, 2014 WL 3891774, at *1 (E.D. La. Aug. 7, 2014).

When property is attached pursuant to the provisions of Supplemental Rule E(4)(b) permitting execution of a warrant without taking actual possession of the property, "the court, on motion of any party or on its own motion, may enter any order necessary to preserve the value of the property, its contents, and any income derived therefrom, and to prevent the destruction, removal or diminution in value of such property, contents and income." Local Admiralty Rule E.4.

Indeed "[t]he interlocutory sale of a vessel pursuant to Rule E(9)(a) does not touch on the merits of any particular claim, but instead is a measure taken to 'avoid[] the recognized complications associated with maintaining a vessel under arrest.'" *Yasi v. M/V Horizon's Edge,* No. 14-10129-DJC, 2014 U.S. Dist. LEXIS 183488, at *12 (D. Mass. Sept. 2, 2014).

    b. <u>Application</u>

The parties agree that the combined value of the vessels in question is $3,350,000.00, the vessels are wasting assets subject to deterioration, and "the expense of keeping the property is excessive or disproportionate" per Supplemental Rule E(9)(a)(i)(B). This last criterion having been met, the Court may order an interlocutory sale. *See Rowan Companies, Inc. v. M/V FR8 PRIDE,* No. C–12–163, 2012 WL 5465964, at *2 (S.D. Tex. Oct. 30, 2012). Unico Marine estimates the cost of keeping the vessels under arrest and attachment at $1,568.53 per day and concludes that if the vessels are sold at public auction, they would generate significantly less value than the proposed sale price.

JMB Shipping does not object to the proposed sale of the vessels, *see* ECF No 61, but stated that it was "not in a position to agree to the Proposed Sale because it has repeatedly requested but has not received from Unico Marine relevant information about the Proposed Sale, including whether there are any other outstanding liens or maritime claims against the Vessel." *Id*. Among other things, JMB Shipping also sought information about the identity of the buyer, which it agreed to view under a confidentiality order, and the amounts to be deducted from the sale price, including shipyard costs, repair expenses, and brokers fees. *Id*. at 1–2. On February 4, 2022, Unico Marine filed a declaration, which purported to show it had addressed JMB Shipping's concerns about the sale. *See* Third Valentini Decl. Glander has joined and supported the motion for interlocutory private sale. *See* Mot. for Joinder.

JMB Shipping correctly notes that federal law requires "[a]ny personalty sold under any order or decree of any court of the United States [to] be sold in accordance with section 2001 of this title, unless the court orders otherwise." 28 U.S.C. § 2004. 28 U.S.C. § 2001 requires a hearing, notice to interested parties, a finding that the best interests of the estate will be conserved by the conditions of the sale, and the appointment of three disinterested persons to appraise the property. Notably, however, personalty is to be sold under 28 U.S.C. § 2001 "unless the court orders otherwise." 28 U.S.C. §2004; *see also Sec. & Exch. Comm'n v. Amerindo Inv. Advisors Inc.*, No. 05-cv-5231, 2016 WL 10826483, at *1 (S.D.N.Y. Apr. 26, 2016) (Sullivan, J.) ("Pursuant to 28 U.S.C. § 2004, courts have discretion regarding the procedures used to consummate a court-ordered sale of personal property."); *see also United States v. Kerner*, No. 00-cv-75370 (AC), 2003 WL 22905202, at *2 (E.D. Mich. Oct. 24, 2003) ("Under . . . 28 U.S.C. § 2004, . . . the Court clearly has the discretionary authority to confirm the private sale [of shares of company stock]."); *see also United States v. Branch Coal Corp.*, 390 F.2d 7, 10 (3d Cir. 1968)

13

(noting that "Congress has authorized the federal judiciary to use sound discretion in setting the terms and conditions for judicial sales," and that it is "well-settled" that, except in cases of abuse, "appellate courts will not disturb the exercise of a district court's discretion in setting the terms and conditions for a judicial sale and the confirmation thereof").  The court thus has discretion to order the interlocutory sale requested by Unico Marine and to which the other parties do not object.

Unico Marine's motion for interlocutory sale pursuant to Supplemental Rules E(5)(c) and E(9) asks this Court to:

1. order[] the interlocutory private sale of the M/V TERESA and Barge ACADIA to a third-party purchaser for the price of Three Million Three Hundred and Fifty Thousand Dollars ($3,350,000), consistent with the terms of a December 3, 2021 Memorandum of Agreement; 2. order[] that the sale proceeds from such interlocutory private sale be deposited into the Registry of the Court pursuant to Local Rule 67.1 within ten (10) business days of the Order; 3. order[] that, upon confirmation by the Clerk and the U.S. Marshal that the purchase price has been deposited, the M/V TERESA and Barge ACADIA will be the property of the third-party purchaser, free and clear of all liens, encumbrances, and/or claims; 4. order[] the payment of sale commissions to the sale and purchase brokers; and 5. grant[] such other and further relief as the Court may deem just and proper under the circumstances.

Although JMB Shipping does not object to the proposed sale, it asks the Court to refrain from ordering the sale free and clear of all liens, encumbrances, and/or claims.  Neither Rule E nor Local Admiralty Rule E.4 requires the Court to order a private sale free and clear of these obligations.  In fact, "[a] judicial sale of vessels by an admiralty court acting in rem divests not

14

only all liens held by claimants who intervened in or had notice of the proceeding but all liens everywhere. Upon the sale of a vessel, the liens attach to the proceeds of the sale. . . ." *Morgan Guar. Trust Co. of N.Y. v. Hellenic Lines Ltd.*, 38 B.R. 987, 991 (S.D.N.Y. 1984) (Sweet, J.) (citing G. Gilmore & C. Black, *The Law of Admiralty* §9-85, at 787 (2d ed. 1975)). The Court agrees with JMB Shipping that a private sale of the vessels would not have resulted in a sale free and clear of all liens and that Unico Marine should not have the benefit such a sale absent a showing that it is necessary to preserve the value of the property.

Accordingly, the Court orders the interlocutory private sale of the M/V TERESA and Barge ACADIA to the third-party purchaser for the price of $3,350,000.00, consistent with the terms of the December 3, 2021 Memorandum of Agreement. The Court orders the sale proceeds to be deposited into the Registry of the Court pursuant to Local Rule 67.1 within ten business days of the entry of this order, and upon confirmation by the Clerk and the U.S. Marshals that the purchase price has been deposited, the M/V TERESA and Barge ACADIA will be the property of the third-party purchaser. The Court further orders the payment of sale commissions to the sale and purchase brokers per Unico Marine's request. Finally, the Court sets a bar date for the submission of proof of claim for Monday, February 28, 2022 at 5:00 P.M.

## CONCLUSION

For the reasons set forth above, Defendant Unico Marine's motion to vacate, ECF No. 32, is GRANTED, and Defendant's motion for interlocutory sale, ECF No. 50, is GRANTED in part and DENIED in part.

**SO ORDERED.**

**s/ WFK**

Dated: February 16, 2022      HON. WILLIAM F. KUNTZ, II
    Brooklyn, New York      United States District Judge